S98A2005. WEHUNT v. THE STATE.
(511 SE2d 163)

HINES, Justice.

Michael Wehunt appeals his convictions and sentences for malice murder and possession of a firearm by a convicted felon. In his sole enumeration of error, he contends the evidence was insufficient

---

to support the verdicts.[1]

Viewed to support the verdicts, the evidence showed that Wehunt was in a sexual relationship with the victim, Patricia Grandstaff, for several months before Grandstaff's death. Wehunt was an alcoholic but had not had a drink for several months. However, he began drinking heavily a few days before Grandstaff was shot. During that time, Wehunt and Grandstaff argued about his drinking and during one argument Wehunt fired his pistol into the floorboard of Grandstaff's van to scare her. Wehunt, Grandstaff, and Wehunt's son spent the day before the shooting together. Wehunt continued drinking throughout the day, and he and Grandstaff again argued about his drinking and about Wehunt's refusal to leave his wife for Grandstaff.

The day of the shooting Grandstaff visited Wehunt and his son, arriving about 11:00 a.m. at the house where they were staying. Wehunt drank while his son and Grandstaff smoked marijuana. At about 2:00 p.m., an officer with the Catoosa County Sheriff's Department arrived to serve Wehunt's son with a probation violation warrant. The son hid and Wehunt told the officer that his son was not there. Wehunt and Grandstaff continued to argue about his drinking and his refusal to leave his wife. Later that afternoon, Wehunt shot and killed Grandstaff with a single shot to the head from his nine millimeter pistol. Wehunt was also wounded in the leg by a shot from a .25 caliber pistol.

After the shooting, Wehunt called a friend who was a police officer to surrender. Officers arrived at the scene and waited outside the house while Wehunt's friend entered and retrieved the nine millimeter pistol. Upon the other officers entering the house, Wehunt stated that Grandstaff had shot him and that he "shot the fat bitch between the eyes." Grandstaff was actually shot behind the left ear, with the bullet exiting above the right ear. On his way to the hospital, Wehunt voluntarily stated to Officer Wells that he intentionally shot Grandstaff because she had shot him in the leg.

The next day, Wehunt repeated essentially the same version of events. However, after the police questioned his son, Wehunt gave a

---

[1] The crimes occurred on January 24, 1995. On September 13, 1995, Wehunt was indicted for malice murder, voluntary manslaughter, and possession of a firearm by a convicted felon. He was tried before a jury on October 2-4, 1995, and he was convicted of malice murder and possession of a firearm by a convicted felon; the jury returned a verdict of not guilty on the charge of voluntary manslaughter. On October 4, 1995, he was sentenced to life imprisonment for malice murder and a concurrent five-year term for possession of a firearm by a convicted felon. Wehunt moved for a new trial on October 6, 1995, which was denied on August 19, 1998. His notice of appeal was filed September 2, 1998, and the appeal was docketed in the Court of Appeals on September 4, 1998. On September 9, 1998, the Court of Appeals transferred the appeal to this Court, where it was docketed September 18, 1998, and submitted for decision without oral argument on November 9, 1998.

second statement in which he claimed that the shooting was accidental. In this version, Wehunt, his son, and Grandstaff had decided to leave the house and were packing their belongings. While Wehunt was sitting on the couch, he picked up the nine millimeter pistol from the table next to the couch, "swung" it around, and, while it was pointed at Grandstaff, it discharged. He then panicked and, in an attempt to establish self-defense, had his son shoot him in the leg with the .25 caliber pistol. Expert testimony established that the nine millimeter pistol would fire only if the trigger was pulled, which would require six and a quarter pounds of pressure if the pistol was cocked, and ten and a quarter pounds if not cocked.

Wehunt's son also gave inconsistent statements to the police. First, he stated that he was in a bathroom when he first heard a shot from a small caliber pistol, then a louder shot, and when he came into the living room, saw Wehunt on the couch, shot in the leg, and Grandstaff on the floor, dead. In his second statement, the son said his father and Grandstaff had agreed to take him to Tennessee to avoid arrest on the probation violation warrant, and, while all were in the living room preparing to leave the house, the son heard a shot and saw his father falling back on the couch as though he could not rise. At trial, the son testified he had taken the pistols and hidden them in the days before the shootings. Just before going out the door, Wehunt's son tossed Wehunt the nine millimeter pistol as he lay on the couch, and as Wehunt attempted to rise from the couch, the pistol discharged. Wehunt's son also testified that after Grandstaff was shot, he grabbed a pistol and shot Wehunt in the leg, to ensure that his father safely got to a hospital and jail; he was concerned that if the police returned to serve him with the probation violation warrant and found Grandstaff dead and Wehunt with a pistol, Wehunt might be killed.

Although the first statements Wehunt and his son gave to the police were similar, and both were later admitted to be fabrications, Wehunt's son denied that he had discussed his first version with his father before giving it to the police. Also, contradicting his father's later statement, Wehunt's son denied that his father asked him to shoot Wehunt's leg. Rather, the son testified that it was his own idea, they did not discuss it, and although Wehunt still held the nine millimeter pistol, he did not fear that his father would shoot him in return.

Wehunt contends the only evidence of murder is circumstantial and is rebutted by his son. The jury determines the credibility of witnesses. OCGA § 24-9-80. Wehunt's explanation of events changed during the police investigation, as did his son's. Despite the consistency of their first, admittedly false, versions, those stories were claimed not to have been developed in collaboration. The final ver-

sions, although generally similar, were different in material respects and inconsistency in the evidence is for the jury's resolution. *Clifford v. State*, 266 Ga. 620, 621 (1) (469 SE2d 155) (1996). The jury was entitled to reject the versions of events offered by Wehunt and his son. *Brannon v. State*, 266 Ga. 667, 668 (469 SE2d 676) (1996).

Further, even if the evidence is considered to be only circumstantial, and while circumstantial evidence must exclude all reasonable hypotheses save that of the defendant's guilt, OCGA § 24-4-6, questions regarding the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence, and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law. *Roper v. State*, 263 Ga. 201 (1) (429 SE2d 668) (1993). The jury was entitled to reject the claims of Wehunt and his son that the shooting was an accident and accept the circumstantial evidence of an intentional act. *Griffin v. State*, 251 Ga. 431, 432 (1) (306 SE2d 283) (1983). The evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Wehunt was guilty of the offenses of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgments affirmed. All the Justices concur.*

DECIDED JANUARY 19, 1999.

*Mary Jane Melton,* for appellant.

*Herbert E. Franklin, Jr., District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Daniel G. Ashburn, Assistant Attorney General,* for appellee.